# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MICHAEL FLORES, | : | |
| Plaintiff, | : | No. 3:19-cv-1181 (SRU) |
| | : | |
| v. | : | |
| | : | |
| ROLAND COOK, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Michael Flores, currently confined at Garner Correctional Institution in Newtown, Connecticut and proceeding *pro se*, filed the instant action under 42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 against Commissioner Roland Cook, Warden Hannah, Captain Hurdle, and Correctional Officer John Doe (collectively, "Defendants"). Compl., Doc. No. 1, at ¶¶ 1–12. In his complaint, which was received by the court on August 2, 2019, Flores asserts claims for (i) deliberate indifference to his serious medical needs under the Eighth Amendment; (ii) violations of 42 U.S.C. §§ 1985(3), 1986, and 1988; (iii) intentional infliction of emotional distress; and (iv) negligence. *Id*. at ¶¶ 1, 8, 34–45, 46–51. Flores seeks compensatory and punitive damages, declaratory relief, and attorneys' fees. *Id*. at ¶¶ 51–53.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon

which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and conclusory allegations will not suffice, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

I. Allegations

Flores was first diagnosed with epilepsy over twenty years ago. Compl., Doc. No. 1, at ¶ 21. Because of that diagnosis, the medical department at Garner Correctional Institution ("Garner") issued Flores a bottom bunk pass. *Id*. Flores' condition, along with his prescribed medications, is well-documented in his medical records. *Id.* at ¶ 22.

On February 1, 2019, Officer Doe instructed Flores to re-locate to cell number 119 in the Gulf Unit and directed Flores to sleep on the top bunk. *Id*. at ¶ 23. Flores told Officer Doe that Flores could not take the top bunk because he suffered from a medical condition, which precluded him from sleeping on the top bunk. *Id.* at ¶ 23. Flores also informed Officer Doe that he had a bottom bunk pass. *Id.* at ¶ 24. Officer Doe responded that "he didn't care," and told Flores to address his problem with the unit manager, Captain Hurdle. *Id.* at ¶ 24.

After a few days of sleeping on the top bunk – an experience that "petrified" Flores – Flores spoke with Captain Hurdle about his "medical concerns" with sleeping on the top bunk. *Id.* at ¶ 25. Captain Hurdle nonetheless refused to move Flores to another cell; instead, Captain

2

Hurdle told Flores to "stop crying" and "deal with it." *Id.* at ¶ 26. Captain Hurdle also told Flores that Flores was welcome to transfer to segregation, where several beds were available – an offer which Flores declined. *Id.* at ¶ 27. Flores then submitted several Inmate Request Forms to the medical unit, as well as the Deputy Warden of Operations, which explained Flores' concern with sleeping on the top bunk. *Id.* at ¶ 28. Flores did not receive a response. *Id.*

Several days later, on February 8, 2019, Flores suffered a seizure while sleeping on the top bunk. *Id.* at ¶ 19. He fell to the floor, sustaining "serious" injuries to his neck, lower back, arm, leg, ankle, foot, and head. *Id.* A "code white," or medical emergency, was called, to which several officers and medical staff members responded. Flores was then brought to the medical unit, where he remained for several hours. *Id.* at ¶¶ 30, 31. Once he returned to the housing unit, the medical staff "made sure that the officers in the unit put [Flores] on the bottom bunk." *Id.* at ¶ 31.

II. <u>Analysis</u>

    A. <u>Deliberate Indifference to a Serious Medical Need</u>

Flores alleges that Hurdle and Doe, by assigning Flores to a top bunk when he needed a bottom bunk because of his epilepsy, were deliberately indifferent to his serious medical need. *Id.* at ¶¶ 37, 38. Deliberate indifference to serious medical needs exists when an official "knows that [an] inmate[] faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

The deliberate indifference standard "embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged

3

deprivation must be "sufficiently serious," meaning that the condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been "actually aware of a substantial risk" that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Further, when the defendants are custody staff, the plaintiff must allege that the officers "both kn[e]w of and disregard[ed] 'an excessive risk to the inmate's 'health or safety.'" *Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) (citing *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002)). "Such knowledge may be inferred from circumstantial evidence." *Id.* (citing *Phelps*, 308 F.3d at 186) (internal quotation marks omitted).

Here, with respect to the objective prong, Flores suffers from epilepsy, a medical condition that courts have recognized as sufficiently serious. *See Boomer v. Lanigan*, 2001 WL 1646725, at *3 (S.D.N.Y. Dec. 17, 2001) (noting that "[e]pilepsy, or an epileptic seizure, is a serious condition") (internal citation omitted). With respect to the subjective prong, Flores' complaint indicates that Flores raised his medical concerns about sleeping on the top bunk with both Hurdle and Doe. *See id.* at ¶¶ 23, 25. The complaint further asserts that Flores had a valid bottom bunk pass because of his epilepsy. *Id.* at ¶ 24. Hurdle and Doe nonetheless declined to re-assign Flores to a bottom bunk, leaving Flores with the top bunk. *Id.* at ¶¶ 24, 26. Those allegations are sufficient for me to infer that both Hurdle and Doe understood the risk that their actions posed to Flores.

For the foregoing reasons, I conclude that Flores has stated a plausible claim for

4

deliberate indifference to a serious medical need against Hurdle and Doe, and will therefore permit his claim to proceed at this time.

B. <u>Supervisory Liability</u>

Flores also names Commissioner Cook and Warden Hannah as defendants, whom he describes as parties responsible for the "overall operation" of the Connecticut Department of Corrections and of Garner, respectively. *See id*. at ¶¶ 9, 10. To plead a supervisory liability claim, a plaintiff must demonstrate that:

> (1) "the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the constitutional violation through a report or appeal, failed to remedy the wrong,
> (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or
> (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring."

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1047-48 (2d Cir. 1989) ("supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act").

In this case, Flores does not allege that Cook or Hannah played a role in placing Flores on the top bunk, had any information indicating that he was assigned to a top bunk, created a policy or custom that enabled the assignment, or were grossly negligent in supervising Hurdle or Doe. Rather, the complaint states that Flores complained about his bunk assignment only to the medical unit and the Deputy Warden of Operations, as well as Hurdle and Doe. Because Flores

5

has not alleged facts suggesting that either Cook or Hannah had notice of the assignment at issue, he has failed to state a plausible claim for supervisory liability against either individual. The claims against Cook and Hannah are therefore dismissed under 28 U.S.C. § 1915A(b)(1).

    C.    <u>42 U.S.C. §§ 1985(3), 1986, 1988</u>

In addition to section 1983, Flores purports to bring claims under 42 U.S.C. §§ 1985(3), 1986, and 1988. A review of the complaint, however, reveals that Flores has not stated a cognizable claim under those statutes.

First, section 1985(3) proscribes conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *See Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal*, 556 U.S. 62 (2009). Here, Flores alleges no facts supporting a racial or class-based conspiracy, and therefore fails to state a plausible section 1985(3) claim.

Second, section 1986 does not afford substantive rights; it merely provides a remedy against those who have violated section 1985. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). A prerequisite for an actionable section 1986 claim is therefore a cognizable section 1985 claim. *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000). In this case, because Flores has not asserted a valid section 1985 claim, he has likewise not asserted a cognizable section 1986 claim.

Third, section 1988(a), which provides that district courts shall exercise their jurisdiction over civil rights cases in accordance with federal law where appropriate or state law, does not afford an independent cause of action. *See Moor v. Alameda Cty.*, 411 U.S. 693, 799–806 (1973). Further, section 1988(b) provides for award of attorneys' fees, to which Flores is not

entitled because he is proceeding *pro se*. *See Kay v. Ehrler*, 499 U.S. 432, 435–37 (1991). Flores' section 1988 claim thus also fails.

For the above reasons, Flores' claims under sections 1985(3), 1986, and 1988 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### D. State Law Claims

Along with the above federal clams, Flores asserts two state-law claims: intentional infliction of emotional distress and negligence. To state a claim for intentional infliction of emotional distress, a plaintiff must establish that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Gomez v. City of Norwalk*, 2018 WL 780213, at *8 (D. Conn. Feb. 8, 2018). Liability for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210–11 (2000).

Here, Flores alleges that the prison medical department issued him a bottom bunk pass because of his epilepsy, and that he informed Hurdle and Doe of his medical concerns with sleeping on the top bunk. *Id.* at ¶¶ 22, 25, 26. Flores further alleges that Hurdle and Doe nonetheless forced him to sleep on the top bunk, and that, while on the top bunk, Flores was "petrified" of falling off. *Id.* at ¶ 25. I conclude that those allegations do not reflect conduct "so outrageous in character, and so extreme in degree," *Appleton*, 254 Conn. at 210–11, and thus do

7

not amount to a plausible claim for intentional inflection of emotional distress.

Moreover, under Connecticut General Statute section 4-165, state employees are protected from negligence suits. *See* Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment."). Accordingly, Flores' state law claim for negligence against Defendants is also dismissed.

E. <u>Declaratory Relief and Damages</u>

Flores seeks a declaration that Defendants' actions and omissions violated his constitutional rights. *See* Compl., Doc. No. 1, at ¶ 51. Declaratory relief, however, operates prospectively; it is intended to enable parties to adjudicate claims before either party suffers significant damage. *Orr v. Waterbury Police Dep't*, 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018) (internal citations omitted). Accordingly, in *Orr v. Waterbury Police Dep't*, this district dismissed a request for declaratory relief because the relief sought "concern[ed] only past actions;" the plaintiff had not "identified any legal relationships or issues that require[d] resolution by declaratory relief." *Id.*

As the plaintiff in *Orr*, Flores seeks declaratory relief relating to past actions. Specifically, Flores seeks declaratory relief pertaining to an incident that occurred in February 2019. His request for declaratory relief is therefore not cognizable[1] and must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

[1] If Flores were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that the defendants had violated his rights regarding that claim. Thus, the request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue Greenwich, Connecticut,* 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-

The only other relief requested is damages. The Eleventh Amendment bars claims for damages against state officials in their official capacities, unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 167, 169 n.14 (1995). Accordingly, because section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332 (1979), and because Flores has not alleged facts suggesting that Connecticut has waived immunity, any federal law claims against Defendants in their official capacities are dismissed. Defendants are also protected by sovereign immunity from Flores' state law claims for damages asserted against them in their official capacities. *See Castillo v. Hogan*, 2016 WL 706167, at *5 (D. Conn. Feb. 22, 2016) (applying the doctrine of sovereign immunity to state law claims and noting that "[t]he doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from performance of their duty") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, all claims against Cook and Hannah, all claims under 42 U.S.C. §§ 1985(3), 1986, and 1988, and all supplemental state law negligence and intentional infliction of emotional distress claims are **DISMISSED** in accordance with 28 U.S.C. § 1915A(b)(1). Flores' request for declaratory relief and claims for damages against Defendants in their official capacities are also **DISMISSED** under 28 U.S.C. § 1915A(b)(2).

The case will proceed on the Eighth Amendment claim for deliberate indifference to a serious medical need against Hurdle and Doe in their individual capacities.

---

claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

The Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses for defendant Hurdle with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to him at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) T**he Clerk shall** send Flores a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Flores changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Flores must give notice of a new address even if he is incarcerated. Flores should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Flores has more than one pending case, he should indicate all the case numbers in the notification of change of address. Flores should also notify the defendants or the attorney for the defendants of his new address.

(9) Flores shall utilize the Prisoner Efiling Program when filing documents with the court. Flores is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Flores.

(11) The Court cannot effect service on defendant Doe without his full name and current work address. Flores is directed to obtain this information though discovery and file a notice containing the information with the court. Once Flores has identified this defendant, the Court will order service of the Complaint.

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of November 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge